By the Court, Beardsley, J.
The fifty-fifth section of article four, title two, chapter eighteen, of the revised statutes, is as follows: “ Every person who, to avoid the payment of the legal toll, shall, with his team, carriage or horse, turn out of a turnpike road, or pass any gate thereon, on ground adjacent thereto, and again enter on such road, shall for each offence forfeit the sum of five dollars to the corporation injured.” (1 R. S. 588.) By the thirty-sixth section of the third article, same title, it is provided, that tolls shall not be collected “ at any gate of any company incorporated under this title &c., from any person residing within one mile of the gate at which toll is demanded, unless he shall be employed in the carriage or transportation of the property of other persons, not so residing.” (1 R. S. 584, 5, § 36, subd. 3.)
The Watervliet Turnpike Company was created by an act passed on the thirty-first of March, 1828. (Sess. Laws of 1828, p. 153.) It was authorized to make a turnpike road “ from the north boundary line of the city of Albany, to the upper ferry - *618 opposite the city of Troy,” and the act declares that “ the said company shall have all the rights, privileges, powers and immunities granted, and be subject to all the regulations, restrictions and liabilities imposed by title first, chapter eight, of the revised statutes, except as the same are altered or modified by this act.” (Id. 154, § 4.)
The reference here made to chapter eight of the revised statutes is plainly a mistake. That chapter relates to the “ duties of the executive officers of the state,” and to “ various matters connected with their respective departments.” (1 R. S. 162.) The legislature obviously meant to refer to chapter eighteen, which relates to corporations in general, and to the first title of that chapter. (Id. 577.) This title relates particularly to turnpike corporations, and the plaintiffs were subjected to its provisions, except so far as these were modified by the charter, notwithstanding the chapter was referred to by a wrong number. (See Sess. Laws of 1828, p. 154, § 10, and 1 R.S. 578, § 1.) To construe the reference according to its literal import, would be to make the act of 1828 absurd and senseless in this respect. Sections fifty-five and thirty-six above set forth, were therefore originally as clearly applicable to this turnpike company as to any other. It could sue and recover a penalty for passing round its gate; but no person residing within a mile of the gate was ordinarily bound to pay toll, and consequently could not, except under special circumstances, incur a penalty for evading it.
But the charter of this company was amended by an act passed in 1829, the sixth section of which is as follows: “ The said company is hereby exempted from the restriction contained in the thirty-sixth section of the third article of the sixteenth chapter of the revised statutes, relating to turnpike incorporations.” (Sess. Laws of 1829, p. 393.)
This section refers to some restriction then resting on the company, and which was thereby intended to be removed. The sixteenth chapter of the revised statutes, however, contains no restriction upon turnpike companies, but is entitled “ Of Highways, Bridges and Ferries.” (1 R. S. 501.) That part of the revised statutes “ relating to turnpike incorporations,” is found *619 in the eighteenth chapter; and by the thirty-sixth section of the third article of this chapter, turnpike corporations are restricted from exacting toll of various classes of persons, among whom are those residing within a mile of their gates. That restriction, as we have seen, rested upon the plaintiffs in 1829, and was undoubtedly the one intended to be removed by the amendatory act then passed. Does the erroneous reference to the chapter in which the restriction is found, prevent this intention from taking effect ?
A statute is not to be nullified because some of its provisions are absurd, repugnant or untrue. It should be so construed as to make it effective, rather than to destroy it. (Britton v. Ward, 2 Rolle's Rep. 127; Moore v. Hussey, Hob. Rep. 93,97.) If enough remain, after rejecting the parts which are inappropriate, to show what was intended by the legislature, that will suffice. In The Chancellor of Oxford’s case, (10 Rep. 57,) it was resolved, that in an act of parliament, the “misnomer of a corporation, when the express intention appears, shall not avoid the act no more than a will, for parliament’, testament’, et arbitramentum, are to be taken according to the minds and intentions of those who are parties to them. And therefore when the description of a corporation in an act-of parliament or in a will is such, that the true corporation intended is apparent, and it is impossible to be intended of any other corporation, although the right name of the corporation (which is requisite to be expressed in grants and deeds) is not precisely followed, yet the act of parliament and will shall take effect:” Now in the present case, the “ true chapter meant” by the sixth section of the act of 1829 is so apparent, that “ it is impossible to be intended of any other and the provision should therefore “take effect.” In Massachusetts, where a statute referred to a vote of a town by a wrong date, it was held that the date might be rejected as surplusage, the reference being clear without: it and on this principle effect was given to the statute, (Shrewsbury v. Boylston, 1 Pick. 105:) The maxim falsa demonstrate non nocet, is founded in common sense as well as law, and is not less applicable to statutes than to wills and deeds.
*620 There are other well established principles and maxims for the interpretation of statutes, which lead to the same result. “ Every statute ought to be expounded, not according to the letter, but according to the meaning: qui hceret in litera hceret in cortice.” (Dwarris on Stat. 690.) And the intention is to govern, although such construction may not, in all respects, agree with the letter of the statute. (Plowd. Rep. 205.) “ Constructions of statutes are to be made of the whole acts, according to the intent of the makers, and so sometimes are to be expounded against the letter, to preserve the intent.” (The King v. The Bishop of London, 1 Show. 491; Bac. Abr. tit. Statute, (I), pl. 5; Sir W. Jones’ Rep. 105.) “ The meaning of the words of an act of parliament is to be ascertained from the subject to which it refers.” (3 Bing. 193, per Best, Ch. J), The reason and object of a statute are a clue to its true meaning. (Dwarris on Stat. 696.) Now the words contained in the sixth section of the'act of 1829, are entirely pertinent and sensible, when considered in reference to the eighteenth chapter of the first part of the revised statutes, but are utterly idle and senseless when applied to the sixteenth chapter. It is obvious, moreover, that the design of the act was to give increased encouragement to the company in their enterprise. It shortened their road, while it gave additional toll; and, effect being given to the sixth section, it authorized them to receive toll of many persons who before were exempt from it.
I have therefore no hesitation in holding that the sixth section of the act of 1829 exempts this company from the restriction contained in the thirty-sixth section of title! first, chapter eighteen of the revised statutes; and that persons residing within a mile of their gate are bound to pay toll, like others, and may subject themselves to a penalty by passing round it.
Penal statutes, in declaring what acts shall constitute an of-fence, and in prescribing the punishment to be - inflicted, are certainly to be construed rigorously. 9Dwarris on Stat. 736.) This principle is not denied or questioned. But there is no lack of certainty in the fifty-fifth section of the revised statutes, which imposes the penalty sought to be recovered in this case ; nor in *621 the thirty-sixth section, which exempts certain persons from the payment of tolls. The only doubt, so far as any exists is, whether the act of 1829 did not relieve this company from the restriction contained in the last mentioned section. I have stated the reasons on which I think it did; and if these are well founded, the judgment of the mayor’s court should be reversed, and that of the justice affirmed.
Judgment accordingly.